1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,                )
                                         )
                    Plaintiff,           )        Case No. 2:09-cr-00161-PMP-PAL
                                         )
vs.                                      )        **REPORT OF**
                                         )   **FINDINGS AND RECOMMENDATION**
JOE RILEY,                               )
                                         )        (M/Suppress - Dkt. #19)
                    Defendant.           )
_____)

        This matter is before the court on defendant Joe Riley's ("Riley") Motion to Suppress (Dkt. #19)
filed October 21, 2009, which was referred to the undersigned for a report of findings and
recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-3 and IB 1-4.  The court has
considered the motion, the government's Opposition (Dkt. #20), defendant's Reply (Dkt. #22), and the
government's Sur-Reply (Dkt. #23).

                                    **BACKGROUND**

        Riley is charged in an Indictment (Dkt. #1) returned April 21, 2009 with Felon in Possession of
Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and two counts of Possession With Intent
to Distribute a Controlled Substance, in violation of 18 U.S.C. § 841(a)(1).  In the current motion, he
seeks to suppress evidence recovered during a search of 2412 Olive Street, Apartment 1, Las Vegas,
Nevada, pursuant to a state telephonic search warrant and statements made after it was executed.

                                    **DISCUSSION**

I.      **The Parties' Positions**

        A.      **The Motion to Suppress (Dkt. #19)**

        Riley seeks to suppress evidence recovered from a search of his apartment at 2412 Olive Street
in Las Vegas, Nevada, asserting the search warrant was not supported by probable cause to believe that

drugs and firearms would be found in the searched premises.  He also seeks to suppress inculpatory statements he made after evidence was recovered from his apartment, contending his statements were the "fruits" of an illegal search and seizure.  In the alternative, he asks that the court hold a hearing "to determine the factual circumstances surrounding the search of Riley's apartment and the interrogation of Riley hereafter."  Motion, 3:24-26.  He argues the search warrant lacked probable cause because it was based on a single drug transaction from Riley's apartment and that nothing in the affidavit would indicate that the person who sold the informant drugs from the apartment was still in the residence after the informant left.  The court should suppress inculpatory statements made by Riley after evidence was recovered from his apartment under the "fruit of the poisonous tree" doctrine because they were tainted by an illegal search and seizure.

### B.    The Government's Response (Dkt. #20)

The government opposes the motion and request for an evidentiary hearing, asserting there are no contested issues of fact which require a hearing.  The defendant's motion to suppress relies upon a copy of the Las Vegas Metropolitan Police Department's ("LVMPD") Declaration of Arrest prepared by Detective Neri, the duplicate search warrant issued by Judge Valerie Adair, and a copy of a transcript of the telephonic application for the search warrant.  The government agrees with the facts stated in the documents Riley relies upon to support his motion to suppress and argues there are no issues of contested facts which require an evidentiary hearing.  The government also claims that Riley received and waived *Miranda* warnings before making inculpatory statements and that he is not entitled to an evidentiary hearing "just to flush out more details about" his statements.  Opposition, 3:6-10.

The government contends that the search warrant was supported by probable cause and is entitled to a presumption of validity.  The government argues in the alternative that even if the search warrant lacked probable cause, the good faith exception to the exclusionary rule applies because the officers reasonably relied on the warrant in good faith, and suppression is, therefore, not required.  The government also argues that statements Riley made after execution of the search warrant should not be suppressed even if the search warrant is found to be defective because the officers had probable cause to arrest Riley.  Riley does not claim that his statements were obtained in violation of his *Miranda* rights

/ / /

1   or that his waiver was not knowing and voluntary.  Therefore, the government asserts the exclusionary

2   rule does not bar admission of his statements.

3       **C.      Riley's Reply (Dkt. #22)**

4           The reply reiterates Riley's argument that the search warrant was invalid because the affidavit

5   supporting it failed to establish probable cause to believe that drugs and firearms would be found in

6   Riley's apartment because: (1) the affidavit does not contain a description of the person suspected to be

7   selling drugs; (2) the affidavit does not indicate that Riley was a known drug dealer; and (3) nothing in

8   the affidavit supports a finding that the apartment to be searched was a dwelling known for drug

9   activity.  Riley contends that the good faith exception to the exclusionary rule does not apply because

10  the affidavit supporting the search warrant was so lacking in probable cause that no reasonable officer

11  could rely upon it in good faith.  Riley also reiterates his arguments that the court should suppress

12  inculpatory statements he made because they were obtained through the police officers' exploitation of

13  their own illegal search, and the taint was not dissipated or attenuated by intervening events.  Finally,

14  Riley disputes that arresting officers had probable cause for his arrest before the search and seizure of

15  his apartment.  However, assuming *arguendo* probable cause to arrest him existed, his statements

16  should still be suppressed because the government's reliance upon New York v. Harris,

17  495 U.S. 14 (1990), is misplaced.

18                              **DISCUSSION**

19          The Fourth Amendment secures "the right of the people to be secure in their persons, houses,

20  papers, and effects against unreasonable searches and seizures."  U.S. Const. amend. IV.  The Fourth

21  Amendment protects reasonable and legitimate expectations of privacy.  Katz v. United States, 389 U.S.

22  347 (1967).  The Fourth Amendment protects "people not places."  Id.  Evidence obtained in violation

23  of the Fourth Amendment, and evidence derived from it may be suppressed as the "fruit of the

24  poisonous tree."  Wong Sun v. United States, 371 U.S. 471 (1963).

25      **A.      Evidentiary Hearing**

26          The United States Court of Appeals for the Ninth Circuit has held that an evidentiary hearing on

27  a motion to suppress need only be held if the moving papers allege facts with sufficient definiteness,

28  clarity, and specificity to enable the court to conclude that contested issues of material fact exist.

3

1  United States v. Howell, 231 F.3d 615, 620 (9th Cir. 2000), citing, United States v. Walczak, 783 F.2d

2  852, 857 (9th Cir. 1986); United States v. Harris, 914 F.2d 927, 933 (7th Cir. 1990); United States v.

3  Irwin, 613 F.2d 1182, 1187 (9th Cir. 1980); United States v. Carrion, 463 F.2d 704, 706 (9th Cir. 1972)

4  ("Evidentiary hearings need be held only when the moving papers allege facts with sufficient

5  definiteness, clarity, and specificity to enable the trial court to conclude that relief must be granted if the

6  facts alleged are proved.").  "A hearing will not be held on a defendant's pre-trial motion to suppress

7  merely because a defendant wants one.  Rather, the defendant must demonstrate that a 'significant

8  disputed factual issue' exists such that a hearing is required."  Howell, 231 F.3d at 621, citing, Harris,

9  914 F.2d at 933.  The determination of whether an evidentiary hearing is appropriate rests in the

10  reasoned discretion of the district court.  United States v. Santora, 600 F.2d 1317, 1320 (9th Cir.),

11  amended by 609 F.2d 433 (1979).  Having reviewed the moving and responsive papers, the court

12  concludes there are no contested issues of fact that require an evidentiary hearing with respect to Riley's

13  Fourth Amendment claims and that the motion may be decided as a matter of law.

14  **B.    Probable Cause**

15  In Illinois v. Gates, 462 U.S. 213 (1982), the United States Supreme Court evolved new

16  standards by which search warrants are to be judged by reviewing courts once issued and executed.

17  After Gates, it is clear that the determination of probable cause is made by examining the "totality of the

18  circumstances."  The United States Supreme Court has repeatedly emphasized that the probable cause

19  standard is "practical, non-technical conception."  Brinegar v. United States, 338 U.S. 160, 176 (1949).

20  Probable cause deals with "probabilities" which are not technical, but factual and practical

21  considerations of everyday life on which reasonable and prudent people, not legal technicians, act.  Id.

22  at 175.

23  The Supreme Court held in Ornelas v. United States, 517 U.S. 690 (1996), that a probable cause

24  determination is two-fold.  First, judges must determine the "historical facts," that is, the events that

25  occurred leading up to the stop or the search.  Id. at 695.  Second, judges are to decide "whether those

26  historical facts, viewed from the standpoint of a reasonable officer," amount to probable cause.  Id. at

27  696-97.  Probable cause to search exists if the affidavit supporting the warrant establishes "a fair

28  probability that contraband or evidence of a crime will be found in a particular place."  Whether there is

4

1    a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is

2    a "common sense, practical question."  United States v. Gourde, 440 F.3d 1065, 1069 (citing and

3    quoting Gates, 262 U.S. at 230.  Neither certainty nor a preponderance of the evidence is required.  Id.

4    (citing Gates, 462 U.S. at 246.)

5          In Untied States v. Arvizu, 534 U.S. 266 (2002), the Supreme Court emphasized that courts

6    "must look at the 'totality of the circumstances' of each case" rather than considering each piece of

7    evidence in isolation.  A search warrant must be based on trustworthy information which can include a

8    tip from an informant, as long as the tip is reliable.  See Gates, 462 U.S. at 283.  Reliability may be

9    shown by an informant's past record of reliability, through independent confirmation or personal

10    observation by the police, or by other methods.  See Alabama v. White, 496 U.S. 325 (1990).

11          It is well recognized that law enforcement officers can rely on their own experience and the

12    experience and information of other law enforcement officers in establishing probable cause.  United

13    States v. Butler, 74 F.3d 916 (9th Cir. 1996).  Similarly, "a magistrate may rely on the conclusion of

14    experienced law enforcement officers regarding where evidence of a crime is likely to be found."

15    United States v. Fannin, 817 F.2d 1379, 1381 (9th Cir. 1987).  See also United States v. Ayers,

16    924 F.2d 1468, 1479 (9th Cir. 1991) ("In weighing the evidence supporting a request for a search

17    warrant, a magistrate may rely on the conclusions of experienced law enforcement officers regarding

18    where evidence of a crime is likely to be found.")  An officer need not include all information in his

19    possession to obtain a search warrant.  An affidavit need only show facts adequate to support the

20    finding of probable cause.  United States v. Johns, 948 F.2d 599, 605 (9th Cir. 1991).  An affidavit

21    supporting a search warrant establishes probable cause if it contains sufficient facts to justify a

22    conclusion that the property which is the object of the search is probably on the premises to be searched

23    at the time the warrant is issued.  United States v. Hendricks, 743 F.2d 653, 654 (9th Cir. 1984),

24    quoting Durham v. United States, 403 F.2d 190, 193 (9th Cir. 1968), cert. denied, 470 U.S. 106 (1985).

25          The Gates decision made it clear that a judge's decision regarding probable cause should be

26    given great deference.  The duty of a reviewing court is to ensure that the issuing judge had a substantial

27    basis for concluding that probable cause existed.  A reviewing court is required to examine all of the

28    / / /

1   circumstances set forth in the affidavit and, in a doubtful case, to give preference to the validity of the

2   warrant.  United States v. Peacock, 761 F.2d 1313, 1315 (9th Cir.), cert. denied, 474 U.S. 847 (1985).

3        The search warrant in this case gave authorization to search for cocaine, paraphernalia

4   commonly associated with the ingestion and distribution of cocaine, limited items of personal property

5   tending to establish a possessory interest in the searched premises and items seized, and U.S. currency

6   as evidence of the crime.  The warrant was supported by the affidavit of Officer Neri who averred that

7   he was an officer employed the LVMPD assigned to the Downtown Area Command Problem Solving

8   Unit.  He sought permission to search 2412 Olive, Apartment 1, Las Vegas, Nevada, in connection with

9   his investigation of the crime of sale of cocaine on April 9, 2008.  To support his assertion probable

10   cause existed, he related that on April 9, 2008, he and fellow Officer Prager met with a confidential

11   informant ("CI").  Neri knew the identity of the CI but did not reveal it in the affidavit for fear of the

12   CI's safety in the event the person subject to the investigation learned the CI's identity.  Neri agreed to

13   provide the court with the identity of the CI at a subsequent time if required.  Neri indicated the CI was

14   motivated to provide police assistance in exchange for consideration for reducing pending charges

15   against the CI.  He also swore the CI had working knowledge of controlled substances and the

16   distribution of narcotics on a street level.  Neri relayed to Judge Adair that he made the CI fully aware

17   that any information the CI provided must be completely true and accurate for the CI to receive any

18   reduction on pending charges.  Neri made no promises to the CI.

19        When Officers Neri and Prager met with the CI, the CI stated that he knew a black male who

20   sold cocaine from an apartment at 2412 Olive, Number 1, in Las Vegas, Nevada, because the CI had

21   purchased cocaine from this location in the past.  To confirm the information the CI provided , Neri

22   arranged a controlled buy during the nighttime hours.  The CI was searched to ensure he had no

23   controlled substances or money on his person and was provided with LVMPD buy money.  The CI was

24   driven to 2412 Olive by Officers Neri and Prager in an unmarked LVMPD vehicle.  The CI was

25   observed leaving the undercover vehicle and was constantly surveilled during the controlled buy.  The

26   CI knocked on the door of Apartment 1, entered, and remained for a short period of time.  The CI left

27   the apartment and went directly back to the officers' vehicle without making contact with anyone along

28   / / /

1   the way.  The CI handed the officers the cocaine he had purchased and told Neri that he bought cocaine

2   from an unknown black male in the apartment with LVMPD buy money.

3        Neri recognized the purchased substance as consistent with cocaine and performed a field test

4   which tested positive for cocaine.  Neri was certified in December 2004 to perform the field test.  Based

5   on Neri's training and experience, almost all persons who sell narcotics for profit maintain records of

6   their transactions, including records of suppliers and customers, as well as owe sheets.  Additionally,

7   because narcotics are extremely valuable, sellers carefully weigh controlled substances before

8   packaging it for resale.  Repackaging is sometimes done in plastic baggies and sometimes in paper

9   containers or foil wrappers.  Neri swore that narcotics are frequently "stretched" by adulterants; and,

10   therefore, it was likely that scales, baggies, containers, mixers, and adulterant agents might be at the

11   apartment.  Persons selling narcotics frequently have at least some amount of drugs on their person and

12   use agents and runners to assist them.  Based on these facts, Detective Neri asked for authorization to

13   search the person of the adult located at the apartment.  Because the controlled buy was made in the

14   nighttime, authorization was requested to execute the warrant during all hours of the day and night.

15   Officer Neri indicated that approaching the residence in the darkness would assist LVMPD in making a

16   safe approach and entry and help ensure the safety of residents and children in the area.  Additionally,

17   Detective Neri related that he had learned that the tenants of Apartment 1 were to be evicted and

18   requested nighttime authorization to prevent the loss of evidence.  Based on these representations,

19   Judge Adair found probable cause and authorized issuance of the search warrant.

20        Reviewing the affidavit as a whole, applying the totality of the circumstances test, and showing

21   the issuing judge great deference as mandated by the United States Supreme Court, this court concludes

22   that the issuing judge had a substantial basis for concluding that probable cause existed for the issuance

23   of this warrant.  As the Supreme Court recognized in Gates, "only the probability, and not a *prima facie*

24   showing of criminal activity, is the standard of probable cause."  462 U.S. at 235.  The evidence

25   presented to Judge Adair, taken as a whole, established the probability that evidence of drug trafficking

26   would be found in the searched premises based on factual and practical considerations of everyday life

27   on which reasonable and prudent people act.

28   / / /

For all of the foregoing reasons,

**IT IS THE RECOMMENDATION** of the undersigned United States Magistrate Judge that defendant's Motion to Suppress (Dkt. #19) be DENIED.

Dated this 23rd day of November, 2009.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

8